IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BEENICK, Jr., | : | (Judge Brann) |
| | : | |
| Plaintiff, | : | No. 4:14-cv-01562 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL LeFEBVRE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM
May 14, 2015

On August 8, 2014, Plaintiff Michael Beenick, Jr. filed a complaint with this

Court, alleging violations of the Eighth and Fourteenth Amendments.  On

September 15, 2014, Defendants collectively filed a Motion to Dismiss the

complaint for failure to state a claim upon which relief may be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6).  On October 14, 2014, Magistrate Judge

Thomas M. Blewitt considered the case on its merits and filed a Report and

Recommendation recommending that: (1) Count I for violation of the Eighth and

Fourteenth amendments through state created danger be dismissed as against

Defendants Mandichak-McConnell, Weavering, Dittsworth, and Fagan; (2) Count

II for violations of the Eighth Amendment through deliberate indifference to

imminent harm and failure to protect be dismissed as against Defendants

Weavering, Dittsworth, and Fagan; (3) Count IV failure to supervise be dismissed

1

as against all named defendants; and (4) Defendants motion be denied in all other respects.  Moreover, Magistrate Judge Blewitt, on his own initiative, recommended dismissal of Plaintiff's claim for monetary damages to the extent he is seeking them against Defendants acting in their official capacities, and Plaintiff's request for declaratory judgment.

Plaintiff has filed an objection to the Report and Recommendation, albeit only objecting to certain findings of the magistrate judge. When objections are filed to the report and recommendation of a magistrate judge, the district court makes "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made."  28 U.S.C. § 636(b)(1)(C); *United States v Raddatz*, 447 U.S. 667, 674-75; 100 S.Ct. 2406; 65 L. Ed. 2d 424 (1980). The court may accept, reject or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id*.  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 675; *see also Mathews v Weber*, 423 U.S. 261, 275 (1976); *Goney* v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).  With regard to those portions of the R&R to which neither party objects, this Court will review the R&R for abuse of discretion. *Cf. Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (although the court is not required to

2

review magistrate judge's report absent objections, "the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report").

In conformity with the following reasoning, Magistrate Judge Blewitt's Report and Recommendation is adopted in part and rejected in part.  Defendants' motion to dismiss is denied with respect to Counts I, II, III and IV.  Defendants' defense of qualified immunity is denied at this stage of the proceedings, although Defendants may reassert the defense at a later stage.  Moreover, Plaintiff's request for declaratory relief is dismissed without prejudice, with leave to amend in accordance with the following reasoning.

## I. BACKGROUND

The Court does adopt the facts as alleged by Plaintiff in his complaint and recited by Magistrate Judge Blewitt, and they are as follows.  On July 13, 2013, while confined at SCI Benner Twp., Plaintiff worked in the kitchen under the direction of Defendant LeFebvre, where he was ordered to slice a watermelon using an electric meat slicer and meat pusher without protective gear or a blade guard.  Moreover, Defendant LeFebvre gave Plaintiff no instruction on how to operate the meat slicer and he did not attempt to teach Plaintiff how to use it. Though Plaintiff initially tried to obey Defendant LeFebvre's order, he had difficulty doing so because the melon was too heavy and slippery.   He explained

to Defendant LeFebvre that he could not safely cut the watermelon with the meat slicer; nevertheless, Defendant LeFebvre ordered him to continue trying to do so. Unfortunately, while complying with that order, the watermelon slipped and Plaintiff cut off two fingers on his hand.  Plaintiff required emergency hospital treatment and surgery for this injury, although he ultimately lost part of his hand permanently.

At the time of the incident, Defendant Mandichak-McConnell was present and was aware that Defendant LeFebvre had ordered Plaintiff to cut the watermelon in a way that was dangerous to his health and safety, but nevertheless failed to intervene on Plaintiff's behalf.  Defendants Dittsworth, Weavering and Fagan failed to make available protective gear even though they were required to do so.  Moreover, these Defendants had knowledge that inmates were routinely ordered to operate the meat slicer in a dangerous way, but allowed the practice to continue in a deliberately indifferent manner.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of

4

the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *Kost*, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,'

in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests.'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  *Id*. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  *Id*. at 327.

## III. DISCUSSION

## A. Count IV Failure to Supervise

Magistrate Judge Blewitt recommended that this Court dismiss Count IV failure to supervise as against Defendants Weavering, Dittsworth, and Fagan on the basis that the allegations in Plaintiff's complaint failed to sufficiently show that they were personally involved in the incident at issue and were deliberately indifferent to Plaintiff's safety.  Rather, he elaborates, Plaintiff's allegations against these three defendants amount to nothing more than liability predicated on a theory of *respondeat superior*, which is not an adequate basis of liability in a civil rights action.  He recommended, however, that Plaintiff be given leave to amend to assert some personal involvement on the part of these Defendants.

Plaintiff objects to Magistrate Judge Blewitt's recommendation of dismissal of this claim.  He argues a recent decision by the United States Court of Appeals for the Third Circuit, *Barkes v. Fist Corr. Med., Inc.*, 766 F.3d 307 (3d Cir. 2014), for the proposition that he has met the pleading standard for supervisory liability. The supervisory Defendants counter that Plaintiff cannot prove that they were deliberately indifferent to Plaintiff's safety because his single incident is insufficient to satisfy the objective substantial risk of harm element and there is no basis to believe that they subjectively knew of and disregarded an excessive risk to Plaintiff's safety because they were not working that day.

As Plaintiff points out, Magistrate Judge Blewitt's report and recommendation failed to address the ways in which *Barkes* clarified Third Circuit law in the aftermath of the United States Supreme Court decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  It is true, as Magistrate Judge Blewitt acknowledged and Defendants argue, that government officials may not be held liable for the unconstitutional actions of their subordinates on a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.  It was on this principle that Magistrate Judge Blewitt founded his analysis.  In doing so, Magistrate Judge Blewitt unfortunately failed to recognize the myriad of ways in which Plaintiff had alleged that Dittsworth, Weavering, and Fagan, through their own individual actions, had violated his constitutional rights.

To that end, *Barkes* reiterated that there are two general ways in which a supervisor-defendant can be held liable for the unconstitutional actions and conduct of their subordinates.  *Barkes*, 776 F.3d at 316.  The first is a direct liability theory, including a theory of knowledge and acquiescence, and the second is policy or practice liability, including a theory based on failure to supervise.  In his complaint, Plaintiff specified only a failure to supervise claim in Count IV. However, throughout the complaint he utilizes language of knowledge and acquiescence.  Consequently, the Court will address both theories as they apply to Plaintiff's allegations.

8

1. <u>Knowledge and Acquiescence</u>

First, liability may attach "if [the defendant] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). To establish liability under the Eighth Amendment based on this theory, a plaintiff must establish: (1) the official had knowledge of the problem and thus the risk that unwarranted punishment was being inflicted; (2) the official either failed to act or took only ineffectual action under circumstances demonstrating deliberate indifference to the plaintiff's plight; and (3) a causal relationship between the official's response to the problem and the infliction of the constitutional violation. *See Sample*, 885 F.2d at 1110. Moreover, "[t]o establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior." *Womak v. Moleins*, Civ. No. 10-2932, 2014 WL 6895150, at * 3 (D.N.J. Dec. 5, 2014).

Although *Iqbal* arguably rejected supervisory liability predicated on a theory of knowledge and acquiescence, the Third Circuit has clarified through *Barkes* that the holding in *Iqbal* was dependent on the constitutional violation at issue. *Barkes*, 766 F.3d at 318 ("[T]he [Supreme] Court expressly tied the level of intent necessary for superintendent liability to the underlying constitutional tort"). Because the claim presented in *Iqbal* – First and Fifth Amendment violations – required that the plaintiff prove that the perpetrator acted with a discriminatory purpose, it necessarily followed that the defendant supervisors need have possessed the same mental state. *Id.* Therefore, the *Barkes* court concluded, "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged.  In this case, the underlying tort is . . . [a] violation of the Eighth Amendment's prohibition on cruel and unusual punishment, and the accompanying mental state is subjective deliberate indifference." *Id.* at 320.

However, following *Iqbal*, the Third Circuit has heightened its pleading bar for supervisory liability claims predicated on a theory of knowledge and acquiescence. *See Supervisory Liability in the Fallout of* Iqbal, 65 Syracuse L. Rev. 103, 142-46 (2014) ("The Third Circuit continues to impose strict pleading requirements in the supervisory liability context, but post-*Iqbal*, its bar has been raised even higher. . . . Its fact pleading bar is so high, it is hard to conceive of a plaintiff possessing enough pre-discovery information to file a properly pled

complaint in most circumstances."). For example, in *Santiago v. Warminster Twp.*, the plaintiff sued police officers and their supervisors for violations of the Fourth Amendment when a police raid of her home led her to have a heart attack. 629 F.3d 121, 129 (3d Cir. 2010). Specifically, the plaintiff in that case alleged that the defendant who was in charge of the operation, Lt. Springfield, "permitted the use of excessive force," which the court interpreted to allege that he had acquiesced in his subordinates' violations. *Id.* Ultimately, the court concluded that the plaintiff had not plausibly pled a claim against Lt. Springfield, stating that the complaint "does not aver that he knew of the allegedly excessive force, nor does it give rise to the reasonable inference that he was aware of the level of force used against one individual." *Id.* at 134.[1]

In *Argueta v. U.S. Immigration and Customs Enforcement*, the plaintiffs were victims of raids by Immigration and Customs Enforcement officials, and they sued high-ranking federal officials alleging violations of their Fourth and Fifth Amendment rights. 643 F.3d 60, 62-63 (3d Cir. 2011). They contended that the defendants had carried out a practice of unlawful and abusive raids of immigrant homes across the state of New Jersey under a nation-wide program instituted by the Department of Homeland Security which increased arrest quotas of illegal immigrants. *See id.* at 62. Specifically, they argued that "the DHS supervisory

---

[1] *Santiago* also dealt with a claim that several other officers directed their subordinates to violate the plaintiff's rights. Because this type of claim is different from both a knowledge and acquiescence claim and a failure to supervise claim, the Court does not discuss it here.

officials named in this Complaint have continued to foster an institutional culture of lawlessness" in that they had failed to develop meaningful guidelines or oversight mechanisms to ensure that home searches were conducted in a constitutional fashion, to adequately train their agents, and to hold the agents accountable for their constitutional violations. *Id.* at 65.  They stated, moreover, that the supervisory defendants had been repeatedly put on notice of the unconstitutional conduct of the agents through lawsuits filed against them and through the media, as well as through communications by the mayor. *See id.* at 66. The Court ultimately concluded that the plaintiff's allegations regarding notice to the defendants of their subordinates' unconstitutional conduct were insufficient because they involved "different raids executed across the country over a period of years" and they were not specific as to the named subordinates. *Id.* at 74-75.  It therefore dismissed the complaint as an implausible allegation of supervisory liability. *See id.* at 75.

In the case at bar, Plaintiff alleges only that Defendants Dittsworth and Weavering knew that LeFebvre and Mandichak-McConnell routinely ordered prisoners to operate the meat slicer to slice food it was not intended to slice, without any safety precautions and without any training.  He alleges more specifically that Defendant Fagan knew of this practice through her periodic inspections, observation, and through verbal and written communications from

12

staff and prisoners.  He further alleges that all of the supervisory defendants "tolerated, condoned, acquiesced in, and encouraged the practice."  These allegations are insufficient to state a claim for supervisory liability under the Third Circuit's heightened pleading standards.  As relates to Defendants Dittsworth and Weavering, the open-ended statement that they had knowledge of their subordinates' conduct is purely conclusory without any facts to support that statement.  As for Defendant Fagan, the allegations against her are very similar to those articulated in *Argueta* in terms of specificity and abundance.  As those allegations in *Argueta* were found to be insufficient, so too do we find them here. Consequently, to the extent Plaintiff's claim in count IV is predicated on a theory of knowledge and acquiescence, it is dismissed without prejudice, with leave to amend in accordance with this Court's decision to more explicitly state the circumstances and specifics of the Defendants' knowledge.

2. <u>Failure to Supervise</u>

The second way in which a supervisor-defendant may be liable for the acts of its subordinates is if, "with deliberate indifference to the consequences, [he or she] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  A subcategory of this type of policy or practice liability includes "failure to" claims,

including failure to train, failure to discipline, and most importantly for the matter before this Court, failure to supervise. *Id.* (citing Rosalie Berger Levinson, *Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post-*Iqbal/Connick *World*, 47 Harv. C.R.-C.L. L. Rev. 273, 280 (2012) ("[C]ausation under § 1983 exists if a municipality or one of its policymakers adopts a policy or practice that, although not itself unlawful, is the moving force of the constitutional violation. . . . [T]he challenged policy is one of failure to act – failure to supervise, failure to train, or failure to discipline subordinates. . . . Even if the failure to act does not rise to the level of constitutional culpability, the failure may still trigger liability, if it can be causally linked to the constitutional rights violation committed by subordinates.")).

The *Barkes* court went on to reaffirm the continued viability of its test for supervisory liability in the context of a failure to supervise claim under the Eighth Amendment, as originally articulated in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). *Barkes*, 766 F.3d at 320 ("Accordingly, we hold that the standard we announced in S*ample* for imposing supervisory liability based on an Eighth Amendment violation is consistent with *Iqbal*).  In that case, the Third Circuit developed a four-part test for establishing a claim based on the failure of a government official to supervise his or her subordinates. Specifically, "[t]he plaintiff must identify a supervisory policy or practice that the supervisor failed to

employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 776 F.3d at 317 (citing *Sample*, 885 F.2d at 1118).  Moreover, the *Barkes* court explicitly rejected the notion that the defendant must have committed an affirmative act in order to be held liable under the Eighth Amendment. *Id.* at 321.

At this point in the litigation the Court need only consider whether Plaintiff has plead a cause of action for failure to supervise, not whether he has proven his claim. I find that he has done so.  Specifically, Plaintiff has alleged that all three of the supervisory Defendants were responsible in their positions of authority to make protective gear available and to ensure that the meat-slicer would not be used without its blade guard.   The failure to make available protective gear with a dangerous cutting instrument and the failure to train prisoners in the use of that instrument necessarily creates an unreasonable risk of injury, especially in the context of a prison environment where prisoners have less liberty to refuse to follow the order of a superior.  Whether the facts at issue here constitute a constitutional violation is inappropriate for the Court to determine at this juncture. I find only that Plaintiff has alleged enough information in his complaint to

plausibly state that a constitutional violation has occurred because of Defendants' inactions. *See Petry v. Beard*, Civil No. 3:09-CV-2312, 2011 WL 1398476, * (M.D.Pa. Apr. 13, 2011) (Carlson, M.J.) ("[T]he Eighth Amendment is implicated in the prison work context . . . when a prisoner employee alleges that a prison official [1] compelled him to perform physical labor which was beyond his strength, [2] endangered his life or health, or [3] caused undue pain.  Moreover, in a setting where prison disciplinary rules enable corrections staff to sanction inmates who refuse to perform specific tasks, these cases all acknowledge that the issue of voluntariness assumes a factual dimension. . . ." (quoting *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006))).

Moreover, Plaintiff does aver that Defendants knew that Defendants LeFebvre and Mandichak-McConnell routinely ordered prisoners to operate the meat slicer to slice food it was not intended to slice, without any safety precautions and without any training.  In the absence of a more developed factual record, the Court is unaware of the exact contours of the Defendants knowledge of their subordinates' conduct.  Furthermore, Plaintiff alleges that Defendants did nothing to prevent this practice, instead tolerating, condoning, and encouraging it.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence, [but] the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result.").  Finally, Plaintiff alleges that his injury, including the loss of his fingers, was directly caused by the failure of the Defendants to take the actions they were required to and their inaction in preventing Defendants LeFebvre and Mandichak-McConnell from allowing this unsafe practice to persist.  These are more than "naked assertions" that formulaically recite the elements of the cause of action.  Consequently, Defendants' motion to dismiss count IV will be denied to the extent Plaintiff's complaint relies upon a theory of failure to supervise.

## B. Count II Deliberate Indifference and Failure to Protect

Magistrate Judge Blewitt next denied Defendants' motion to dismiss Count II for a violation of the Eighth Amendment through deliberate indifference to imminent harm and failure to protect as against Defendants LeFebvre and Mandichak-McConnell.  He did not, however, discuss the remaining Defendants within the context of this claim.  From what this Court can discern, because he subsequently dismissed those Defendants from the litigation entirely for lack of personal involvement, he did not address them within the context of Count II. Neither party has filed an objection to Magistrate Judge Blewitt's recommendation that the motion be denied as to Defendants LeFebvre and Mandichak-McConnell. Plaintiff notes, however, that due to the *Barkes* decision and its intervening precedent on supervisory liability, which this Court has already discussed,

Magistrate Judge Blewitt's analysis must be revised to incorporate a discussion of the three supervisory Defendants.

This Court has given full and independent consideration to Magistrate Judge Blewitt's report and recommendation as it relates to Count II against Defendants LeFebvre and Mandichak-McConnell.  Because this Court agrees with the Magistrate Judge's recommendation that Defendants' motion to dismiss must be denied on Count II as to these Defendants, the Court will not rehash the reasoning of the Magistrate Judge and will adopt the report and recommendation on this count.  Moreover, the Court agrees with the law as stated in the report and recommendation of Magistrate Judge Blewitt; therefore I will not repeat his detailed exposition of the law.  Nevertheless, because of this Court's ruling on Plaintiff's failure to supervise claim in Count IV of the complaint, the Court must necessarily address Defendants' motion to dismiss Count II against the three supervisory defendants, which Magistrate Judge Blewitt had no occasion to do. Based on the law as stated in the report and recommendation, this Court finds that Plaintiff has adequately pled a claim for Eighth Amendment violations through deliberate indifference and failure to protect against the three supervisory defendants, Defendants Weavering, Dittsworth, and Fagan.

**C. Count I State-Created Danger**

Magistrate Judge Blewitt further recommended dismissal of Defendants Mandichak-McConnell, Weavering, Dittsworth, and Fagan from Count I (state-created danger) on the basis that none of them took any affirmative action that created and placed Plaintiff in danger.  He therefore recommended that the claim go forward against only Defendant LeFebvre.  Plaintiff objects to the dismissal of all four Defendants, arguing that a plaintiff need not allege affirmative action on the part of the state actor in a prison context, based in part on the Third Circuit's recent decision in *Barkes*.  Defendants responds only that *Barkes* does not require a different result than that which Magistrate Blewitt has recommended and, moreover, that Plaintiff's complaint is filled with conclusory allegations which fail to survive a 12(b)(6) analysis.

In order to establish a state-created danger claim, a plaintiff must allege four elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that

rendered the citizen more vulnerable to danger than had the state not acted at all. *See Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006); *see also Sanford v. Stiles*, 456 F.3d 298, 304-5 (3d Cir. 2006).  With regard to the first element, Plaintiff has adequately pled that the harm of injuring his hand and losing his fingers was foreseeable and was a direct result of the Defendants' conduct.[2] Moreover, Plaintiff has adequately pled that as an inmate, a relationship existed between him and the state such that he was a foreseeable victim of the Defendants conduct.

Accordingly, the Court must determine whether Plaintiff has adequately pled elements two and four.  With regard to the second element, the fault inquiry requires the Court to ask whether the defendant acted with a degree of culpability that shocks the contemporary conscience. *Bright*, 443 F.3d at 281; *see also Sanford*, 456 F.3d at 305.  However, the Supreme Court has stated that whether behavior rises to the level of conscience-shocking will depend upon the facts of each individual case. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Rules of due process are not . . . subject to mechanical application in unfamiliar territory.").  The Third Circuit has therefore articulated three possible standards to

---

[2] In the case of Defendant LeFebvre, that conduct includes ordering Plaintiff to cut the watermelon with the meat slicer, despite having been told of its danger.  In the case of Defendant Mandichak-McConnell, that conduct amounts to a failure to intervene despite her presence in the kitchen and her intimate knowledge of what Defendant LeFebvre had told Plaintiff to do.  In the case of the other Defendants, that conduct relates not only to their failure to purchase safety equipment and adequately train the inmates on the meat slicer's use, but also in that they were aware that inmates were routinely ordered to cut fruit with the meat slicer but nevertheless did nothing to prevent the practice from continuing.

determine whether behavior rose to the level of conscience-shocking: (1) deliberate indifference; (2) gross negligence or arbitrariness that shocks the conscience; and (3) intent to cause harm. *Sandford*, 456 F.3d at 306.   Importantly, the court held that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases.   In a 'hyperpressurized environment,' an intent to cause harm is usually required.   On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient."[3] *Id.* at 309.   Mere negligence is never sufficient to rise to conscience-shocking behavior.   *See Schieber v. City of Philadelphia*, 310 F.3d 409, 419 (3d Cir. 2003).

    The conduct alleged in the instant case is that the Defendants either directed Plaintiff to use the meat slicer to cut a watermelon or knew that correctional officers routinely ordered such practices and yet failed to stop the practice or provide protective gear to the prisoners who were ordered to do so.   This is not the type of situation in which deliberation would be impossible.   Rather, nothing about the facts alleged indicate that there was anything about the Defendants' conduct which was done under pressure or in an emergency situation.   Consequently, this Court finds that the applicable standard of conscience-shocking behavior for the

---

[3] Specifically, the Supreme Court compared a high-speed chase or a prison riot on one hand with decisions regarding the medical needs of prisoners on the other hand.   In the latter situation, deliberate indifference was the correct standard because the state actor would usually have time to engage in "actual deliberation."   However, in the former scenarios deliberation would be next to impossible and therefore an intent to harm would be required. *See Lewis*, 523 U.S. at 849-54.

facts alleged is one of deliberate indifference.  As previously discussed, plaintiff

has satisfied the second element of the state-created danger theory by adequately

pleading that all Defendants were at least deliberately indifferent to the risk of

harm posed by their actions.

Finally, with regard to the fourth element, typically a plaintiff must prove

that the state actor took affirmative action to create more danger than would

otherwise exist had he not acted at all.  *DeShaney v. Winnebago Cty. Soc. Servs.*

*Dept.*, 489 U.S. 189, 201 (1989) ("While the State may have been aware of the

dangers that Joshua faced in the free world, it played no part in their creation, nor

did it do anything to render him more vulnerable to them . . . . [The State] placed

him in no worse position than that in which he would have been had it not acted at

all.")  However, "when the state takes custody of a citizen, thereby depriving him

of his liberty, that it assumes an affirmative duty to protect him or her from harm."

*Bright*, 443 F.3d at 280; *see also Brown v. Grabowski*, 922 F.2d 1097, 1100-1 (3d

Cir. 1990) ("[A] state's failure to take affirmative action to protect a victim from

the actions of a third party will not, *in the absence of a custodial relationship* . . .

support a civil rights claim." (emphasis added)); *DeShaney*, 489 U.S. at 199-200

("[W]hen the State takes a person into its custody and holds him there against his

will, the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and general well-being. . . . The affirmative duty to

22

protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). Moreover, the Third Circuit recently reaffirmed this proposition in its decision in *Barkes*.[4]

In this case, Plaintiff has alleged that each of the Defendants' actions individually operated to create a danger to the Plaintiff while he was working in the kitchen. Though Magistrate Judge Blewitt is correct in stating that Plaintiff has only alleged affirmative action on the part of Defendant LeFebvre, this Court holds that based on the previously cited law, a plaintiff alleging state-created danger in the prison context need not allege affirmative action on behalf of the defendants. Consequently, the Court holds that Plaintiff has adequately pled all four elements of a theory of state-created danger as against all Defendants and Defendants' motion to dismiss this claim will be denied.

## D. Count III Failure to Intervene

Next, Magistrate Judge Blewitt denied Defendants' motion to dismiss as it related to Count III for failure to intervene, which was only asserted against Defendant Mandichak-McConnell. Neither party has objected to this

---

[4] Plaintiff further argues that in *Barkes* the Third Circuit deleted the requirement of affirmative action from the elements of a state-created danger claim because it portrayed the fourth element to state, "the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." The court in that case did not discuss whether their decision to remove the word "affirmatively" was a deliberate one. Be that as it may, this Court need not at this time decide that issue because this Court bases its decision on the breadth of case law discussed above which explicitly does not require the existence of an affirmative act in the prison context.

recommendation.  Therefore, this Court will review Judge Blewitt's determination for an abuse of discretion and the Court finds that he has not abused his discretion in denying Defendants' motion to dismiss on this basis.

Correctional officers can be held liable under the Eighth Amendment for a failure to intervene; however, the officer can only be liable if there is a realistic and reasonable opportunity to intervene.  *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) ("The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows.  Such silence is an endorsement of the constitutional violation resulting from the illegal use of force. . . . We will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it.").

Plaintiff has alleged that Defendant Mandichak-McConnell was present in the kitchen at the time of the incident and knew that Defendant LeFebvre had ordered him to slice the watermelon with the meat-slicer in an unsafe manner but did nothing to stop him.  As Magistrate Judge Blewitt has stated, this is sufficient to state a claim for failure to intervene and consequently Defendants' motion to dismiss, to the extent it even argued for dismissal of this count, is denied.

**E. Qualified Immunity**

In their motion to dismiss, Defendants assert a defense of qualified immunity.  Magistrate Judge Blewitt recommended that the Court dismiss Defendants' qualified immunity defense at this stage in the proceeding, but allow the Defendants to reassert the defense at a later stage in the litigation.  Plaintiff objects to this recommendation, arguing that the Court should conclusively determine at this juncture that qualified immunity is not available to any Defendant in this case.

The Court has given full and independent consideration to the report and recommendation of Magistrate Judge Blewitt on the defense of qualified immunity, and has considered Plaintiff's objection with appropriate scrutiny. Because this Court agrees with Magistrate Judge Blewitt's recommendation on this point, the Court will not rehash the reasoning of the Magistrate Judge and will adopt his recommendation that the defense be denied at this stage, but that Defendants can reassert it at a later stage in the proceeding.

**F. Availability of Damages**

Towards the conclusion of his report and recommendation, Magistrate Judge Blewitt recommends, albeit without request, that this Court dismiss all requests for monetary relief against Defendants in their official capacities.  Moreover, he recommends that Plaintiff's requests for declaratory relief be dismissed with

25

prejudice because his request pertains only to past constitutional violations by the Defendants and therefore is not based on a substantial likelihood of future harm. Plaintiff chose not to object to the dismissal of any request for monetary damages against the Defendants in their official capacities. However, he did argue that if this Court should adopt the recommendation regarding declaratory relief, he should be given leave to amend to allege an ongoing risk of harm.

With regard to the former, the Eleventh Amendment bars a damages action against a state in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 170 (1985). Moreover, a suit against a state official in his or her official capacity is really a suit against the official's office. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "That is so because . . . a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Graham*, 473 U.S. at 170. Accordingly, although Plaintiff's complaint does not clarify whether he is suing Defendants in their personal or official capacities, the law as stated by Magistrate Judge Blewitt is correct and this Court will adopt his recommendation on this issue.

As for the request for declaratory relief, "[i]n order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.'" *Salvation Army v. Dept. of Community Affairs of State of N.J.*, 919 F.3d 183, 192 (3d Cir. 1990) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974)).  The purpose of this requirement is to avoid the potentiality that a court would issue an opinion advising what the law would be upon a hypothetical state of facts, thereby circumventing the "case or controversy" requirement of the Constitution. *See Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 649 (3d Cir. 1990).

Magistrate Judge Blewitt is correct in asserting that Plaintiff has not alleged any future event, the probable occurrence of which is real and substantial, for which a declaratory judgment would be useful or necessary.  He has, rather, alleged only past actions on the part of Defendants, with no explicit indications that these actions would continue into the future.  Consequently, Plaintiff's request for declaratory judgment is dismissed without prejudice with leave to amend to allege a real and substantial probability of future constitutional violations.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Magistrate Judge Blewitt's Report and Recommendation is adopted in part and rejected in part. Defendants' motion to dismiss is denied with respect to Counts I, II, III and IV. Defendants' defense of qualified immunity is denied at this stage of the proceedings, although Defendants may reassert the defense at a later stage.

Finally, Plaintiff's request for declaratory relief is dismissed without prejudice, with leave to amend in accordance with the following reasoning.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge