## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BEENICK, JR.,

     Plaintiff,

     v.

MR. LEFEBVRE, et al.,

     Defendants.

CIVIL ACTION NO. 4:14-cv-01562

(BRANN, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a prisoner civil rights action. The plaintiff, Michael Beenick, Jr., is represented by counsel. The original complaint in this action was filed by counsel on August 8, 2014. (Doc. 1). At the time, Beenick was incarcerated at SCI Benner Township, which is located in Centre County, Pennsylvania. (*See* Doc. 38-2, at 4; Doc. 47-1, at 4). He has since been released from prison.

An amended complaint was filed on June 9, 2015. (Doc. 21). The matter is now before the Court on cross-motions for summary judgment (Doc. 37; Doc. 45). The motions are fully briefed and ripe for disposition.

## I.  BACKGROUND

On July 13, 2013, Beenick was employed in the prison kitchen at SCI Benner Township. His immediate supervisor on that day was

defendant Michael LeFebvre, a food service instructor. LeFebvre assigned Beenick to slice refrigerated watermelons using an electric slicing machine, a Globe Slicer Model 3600P. At the same time, one or two other inmates were assigned to slice watermelons on other electric slicing machines.

In his previous experience, Beenick had only sliced watermelons manually, with a knife. Likewise, prior to July 13, 2013, inmates at SCI Benner Township had only sliced watermelons manually, with a knife. LeFebvre, however, previously had inmates use an electric slicer at another institution to slice watermelons, without incident, but this was the first and only time he instructed inmates to use the machine at SCI Benner Township.[1] Beenick and the other inmates were not provided with access to a copy of an instruction manual for the electric slicer, nor

[1] The parties dispute whether Beenick had previously used an electric slicing machine, and whether or to what extent Beenick was provided with training on the machine on July 13, 2013. The defendants contend that Beenick told the safety officer, Fagan, that he had previously used the machine, and they contend that LeFebvre showed Beenick how to slice watermelons on the machine and watched him do so. Beenick denies any previous experience with the electric slicing machine, and he denies receiving any training whatsoever that day. The parties also dispute whether Beenick protested, expressed concern for his safety, or requested to slice the watermelon with a knife instead of the electric slicer.

were they provided with any safety equipment, such as cut-resistant gloves. No warning labels were affixed to the electric slicer, nor were any safety charts posted on the kitchen walls near it. The electric slicer was equipped with a "knife cover" that shielded much of the rotary blade's circumference from contact, but part of the cutting edge of the rotary blade remained exposed to permit the slicing of food products. The electric slicer was designed so that it would not operate without the knife cover in place.

While Beenick used the electric slicer, LeFebvre was in and out of the prep area, supervising Beenick as well as other inmates working in different parts of the kitchen area. Beenick had some degree of trouble manipulating the wet watermelon into the electric slicer's rotary blade. The watermelon was placed in the electric slicer's "food chute" with an "endweight" designed to hold it in place. With his right hand placed on the "food chute handle" to guide the food chute back and forth as the slicer operated, he apparently found that the endweight did not hold the wet and slippery watermelon properly in place in the food chute. Beenick used his left hand—his dominant hand—to hold the watermelon in the food chute. His left hand slipped off the watermelon

and into the electric slicer's rotary blade, lacerating his ring and pinky fingers.

Beenick was taken to a local hospital for medical treatment. The wound on his pinky finger was closed with stitches. Some bone at the "tuft"—or tip—of his ring finger had been severed by the rotary blade of the electric slicer. The bone fragment was removed, some nonviable skin was trimmed and the wound was closed with stitches. Beenick was prescribed pain medication, instructed on wound care, and returned to prison.[2]

After the incident, Beenick claims that LeFebvre ridiculed him on several occasions, crying "Finger check!" whenever he saw Beenick; the defendants dispute this claim.[3] Beenick claims that Lee Mandichak-

---

[2] The parties dispute whether and to what extent this injury has caused a permanent loss of function to Beenick's left hand, whether and to what extent it continues to cause him pain, and whether and to what extent it impacts his vocational and recreational opportunities.

[3] The plaintiff does not appear to contend that this statement itself violated Beenick's constitutional rights. *See generally Robinson v. Taylor*, 204 Fed. App'x 155, 156 (3d Cir. 2006) (per curiam) ("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment."); *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the *(continued on next page)*

McConnell, another food service instructor, was present in the kitchen area at the time of Beenick's injury and failed to intervene to prevent it. He further claims that the prison kitchen lacked proper safety equipment and that the inmate kitchen workers were not properly trained on the equipment. He seeks to hold Wallace Dittsworth and John Weaverling, food service managers at SCI Benner Township, and Tammy Bell (Fagan), safety manager at SCI Benner Township, liable for their failure to supervise the food service instructor defendants and for their knowledge and acquiescence in the purportedly unsafe work conditions that led to his injury. Beenick claims that all of the defendants were deliberately indifferent to a substantial risk of serious harm. Alternatively, he claims that they are liable under a "state-created danger" theory of liability. He seeks an award of damages from the defendants for violation of his Eighth Amendment and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983.

---

laws."); *Brown v. James*, 2009 Wl 790124, at *6–*7 (M.D. Pa. Mar. 18, 2009) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."). Instead, he appears to cite these insensitive comments as evidence of LeFebvre's state of mind.

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported

by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 433 (M.D. Pa. 2014) (citation omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films*,

*Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## B. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions concerning prison conditions. *See* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . ."). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). The court's obligation to dismiss a complaint under these screening provisions is not excused even after defendants have filed a dispositive motion. *See id.* at 589. In performing this mandatory

screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926

F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

The amended complaint asserts five distinct causes of action.

(1) Count I asserts a "state-created danger" claim against all defendants, alleging that the defendants created or enhanced a danger that deprived Beenick of his Eighth Amendment and Fourteenth

Amendment substantive due process rights.

(2) Count II asserts a "conditions of confinement" claim against all defendants, alleging that the defendants exhibited deliberate indifference in failing to protect him against harm, depriving Beenick of his Eighth Amendment right to be free from cruel and unusual punishment.

(3) Count III asserts a "conditions of confinement" claim against Mandichak-McConnell, alleging that she exhibited deliberate indifference in failing to intervene despite knowing that LeFebvre had directed Beenick to slice watermelons in an unsafe manner, depriving Beenick of his Eighth Amendment right to be free from cruel and unusual punishment.

(4) Count IV asserts a "conditions of confinement" claim against Dittsworth, Weaverling, and Fagan, alleging that they exhibited deliberate indifference in failing to supervise their subordinates with respect to the proper operation of the electric slicing machine, the proper use of protective gear while using the machine, and the provision of sufficient training for inmates instructed to use the machine, depriving Beenick of his Eighth Amendment right to be free from cruel

and unusual punishment.

(5) Count V asserts a "conditions of confinement" claim against Dittsworth, Weaverling, and Fagan, alleging that they exhibited deliberate indifference insofar as they had knowledge of or acquiesced in their subordinates' violation of Beenick's Eighth Amendment right to be free from cruel and unusual punishment.

## A. State-Created Danger Claim

In Count I, Beenick asserts a "state-created danger" claim against all defendants, alleging that the defendants created or enhanced a danger that deprived Beenick of his substantive due process rights under the Fourteenth Amendment.[4] *See generally Kneipp v. Tedder*, 95

---

[4] Under the "state-created danger" theory, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her *Fourteenth Amendment right to substantive due process.*" *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis added). For reasons that are not entirely clear, Beenick also references the Eighth Amendment in Count I. To the extent he intends by this to assert an Eighth Amendment conditions-of-confinement claim in this same count, it is appropriate to dismiss that portion of Count I as duplicative of his Eighth Amendment conditions-of-confinement claims brought under Counts II, III, IV, and V. *See Solomon v. Sch. Dist. of Philadelphia*, 882 F. Supp. 2d 766, 776–77 (E.D. Pa. 2012); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 940–41 (M.D. Tenn. 2012). Regardless, whether a "state-created danger" or "conditions of confinement" theory is applied would not "substantially alter the
*(continued on next page)*

F.3d 1199, 1205 (3d Cir. 1996).

But this substantive due process claim must be dismissed because it is barred by the "more-specific-provision rule." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998)). "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *see also Korth v. Hoover*, __ F. Supp. 3d ___, 2016 WL 3088147, at *8–*9 (M.D. Pa. June 2, 2016); *Hunter v. Prisbe*, 984 F. Supp. 2d 345, 350–51 (M.D. Pa. 2013).

Accordingly, it is recommended that Count I be dismissed *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). *See also* 42 U.S.C. § 1997e(c)(2) (permitting *sua sponte* dismissal without

---

Court's analysis, since both theories require proof of substantial, foreseeable risk and of willful disregard by state actors." *Houston v. Mercer County*, Civ. No. 09-cv-3530, 2009 WL 3488695, at *1 n.1 (D.N.J. Oct. 21, 2009).

first requiring the exhaustion of administrative remedies).

## B. The Defendants' Motion for Summary Judgment

The defendants' have moved for summary judgment on the ground that Beenick failed to exhaust available administrative remedies, on the merits of each of his claims, and on the ground that the defendants are entitled to qualified immunity.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### 1. Evidentiary Objections by the Plaintiff

As a preliminary matter, we must consider the plaintiff's evidentiary objections to the declarations submitted by the defendants in support of their motion for summary judgment (and in opposition to the plaintiff's motion). The plaintiff notes that the preamble of each of the declarations submitted by the defendants for consideration on summary judgment recites that it is "based upon my personal knowledge or from my review of records routinely maintained during the operation of the Pennsylvania Department of Corrections." (*See* Doc. 47-1, at 2; Doc. 47-5, at 2; Doc. 47-6, at 2; Doc. 47-7, at 2; Doc. 47-8, at 2;

Doc. 47-9, at 2). The plaintiff argues that, because these declarations purport to be based on the review of records, either in whole or in part, they are not made on "personal knowledge" and thus may not be properly considered on summary judgment. The plaintiff asks us to strike the declarations, deny the defendants' motion, and grant the plaintiff summary judgment.

As previously noted, a summary judgment affidavit or declaration must be made on "personal knowledge." Fed. R. Civ. P. 56(c)(4). But "[p]ersonal knowledge can be based on a review of relevant business files and records." *Del Rosario v. Labor Ready Se., Inc.*, 124 F. Supp. 3d 1300, 1316 (S.D. Fla. 2015) (declining to exclude declaration where declarant's personal knowledge was based on a "review of the records").

> Personal knowledge . . . is not strictly limited to activities in which the declarant has personally participated. . . . [P]ersonal knowledge can come from the review of the contents of files and records. Based on personal knowledge of the files and records, a declarant may testify to the acts that she or he did not personally observe but which are described in the record, including requests or statements by third persons made to someone other than the declarant.

*Washington Cent. R.R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993); *see also Khodara Envtl. II, Inc. v. Chest Twp.*,

Civil Action No. 3:2002-96, 2007 WL 3146745, at *1 (W.D. Pa. Oct. 26, 2007) ("[P]ersonal knowledge of a matter included in an affidavit under Rule 56(e) may be based not only upon knowledge gained through one's sensory perceptions, but through a review of records of the matter in question."); *accord Progressive Cas. Ins. Co. v. Fed. Deposit Ins. Corp.*, 80 F. Supp. 3d 923, 934 (N.D. Iowa 2015); *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014); *Colonial Pac. Leasing Corp. v. N & N Partners, LLC*, 981 F. Supp. 2d 1345, 1355 (N.D. Ga. 2013); *Duke v. Nationstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012).

That "personal knowledge" also encompasses knowledge gained through the review of business records does not preclude an objection under Rule 56(c)(2) that "the material cited . . . cannot be presented in a form that would be admissible in evidence." But the plaintiff here has identified no particular statement in any of the challenged declarations that might be inadmissible hearsay, or that otherwise could not be presented in a form admissible at trial. Instead, he requests exclusion of these declarations *in toto* based solely on Rule 56(c)(4)'s "personal knowledge" requirement. Having reviewed each of the challenged

declarations, we find that each is clearly based entirely on the personal knowledge of the declarant. Indeed, notwithstanding a boilerplate reference to a "review of records" in the common preamble to each declaration, all appear to be based entirely on the personal observations or experience of the declarants, with the sole exception of the Shambaugh declaration, which includes both testimonial statements based on Shambaugh's personal experience with the inmate grievance process and authentication of an attached inmate grievance policy and an attached inmate grievance file based on Shambaugh's personal review of institutionally maintained files and records.

Accordingly, the plaintiff's Rule 54(c)(4) objection to consideration of the defendants' declarations is OVERRULED.

## 2. Exhaustion of Administrative Remedies

The defendants have moved for summary judgment on the ground that Beenick failed to exhaust available administrative remedies before filing suit. They argue that his original grievance did not raise any of the claims asserted in Counts III, IV, or V of his amended complaint.[5]

---

[5] They raise this defense with respect to Count I as well, but we have recommended *sua sponte* dismissal under the more-specific-
*(continued on next page)*

They concede that Beenick exhausted administrative remedies with respect to Count II of his amended complaint.

Before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with DOC deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly

---

provision rule. The same reasoning would apply to that count as well.

exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it follows that "grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. But,

> if prison regulations do not prescribe any particular
> content for inmate grievances, "a grievance suffices if it
> alerts the prison to the nature of the wrong for which
> redress is sought. . . . [T]he grievant need not lay out
> the facts, articulate legal theories, or demand
> particular relief. All the grievance need do is object

intelligibly to some asserted shortcoming."

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*,

297 F.3d at 650).

On June 18, 2013, five days after his injury, Beenick submitted an

inmate grievance, in which he stated:

> On 7-13-13 I injured myself in SCI Benner's prep room because they had me using a deli style meat cutter to cut watermelons. I informed my Instructor it wasn't doing the job, right when he passed through and he said "Well just don't cut yourself." The watermelon was falling apart and the handle to grasp which should be meat would not go into the rind and kept slipping down. As I was pushing through with my left hand over the[] right to get some weight on it to hold it firmly in place. It kept slipping due to watermelon juice and the holding tool being unable to puncture the rind. My hand went down with the handle and into the slicer, causing severe injury & pain. I was forced to use this machine for something it wasn't meant to be used for and now I am deformed for the rest of my life. I had to get minor surgery at Mount Nittany Medical Center. And the doctor stated we can save the pinky but will have to partially amputate [the] ring finger. I need to be compensated for my injuries and I would like to have my regular kitchen pay[,] which is 42¢ an hour for 8 hours a day 5 days a week, while I am healing. And [I] would like $40,000 for my injuries, because I will be deformed for the rest of my life and emotionally it will take awhile to get over this tragic situation. Inmate Swrech who workedback there informed me that after this incident (CFSI) Ms. McConnel came back to the prep room and repeatedly claimed she told them to order the me[t]al mesh safe[ty] gloves, which were

never ordered. I also did not receive training and that was my first time ever running that machinery. The prep room is in the 30°–50° degree range. And they do not have the proper safe[ty] gloves, glasses, or warm insulated smocks. Mr. Weaverling came back and stated he will be ordering these items when I first started down there but never did and that was nearly 2 months ago. This is a deliberate indifference to the inmates personal security by the neglig[e]nt act of demanding the inmate to perform his inmate assigned job without proper protective gear and required to attempt to operate a machine which was inadequate for the task assigned[,] places inmate in a position of a pervasive risk of harm in consideration of the following[:] 1.) No protective guard on or around [the] blade. No protective type gloves provided for the operation of a deli style meat cutter. Also no safety glasses or warm insulated smocks, which was all supposed to be ordered. 2.) Acces[s]ory tool to hold items to be sliced inadequate to hold watermelon because the wetness and the small rounded off plastic teeth would not go into the rind. 3.) The 30°–50° degree temperature range requires all the safety equipment necessary to keep warm and dry, which they knowingly should have ordered.

(Doc. 47-3, at 2–3). In addition, Beenick stated that he "[s]poke to safety security manager and she said that [the] machine is not a fruit slicer and shouldn't have been used for that and without training." (*Id.* at 2).

On August 13, 2013, food service manager Dittsworth, who had been assigned to investigate Beenick's grievance, provided a written response to the grievance. Dittsworth upheld the grievance in part and

denied it in part. Dittsworth conceded the fact of Beenick's injury and advised him that he would receive his "normal rate and hours" while he was on "medical lay-in." But Dittsworth disputed several of the facts alleged in Beenick's grievance, including his claim that he never operated the slicer before, that the machine was missing a "blade guard," and that Weaverling and Mandichak-McConnell made the statements attributed to them in the original grievance. (*Id.* at 4–5).

Beenick appealed his grievance to the superintendent of SCI Benner Township and to the chief grievance officer for the Pennsylvania Department of Corrections, exhausting all administrative remedies with respect to the claims articulated in his original grievance. (*Id.* at 12–13).

The defendants contend that Beenick failed to properly exhaust his administrative remedies with respect to claims against Dittsworth, Mandichak-McConnell, or Fagan because his original grievance did not mention Dittsworth at all, and it mentioned Mandichak-McConnell and Fagan only in the context of what they said after the incident. But the prison grievance policy requires only that the inmate "identify individuals *directly* involved in the event(s)." (Doc. 47-2, at 10). None of

these three are alleged to have had any direct involvement in the incident that resulted in Beenick's injury. Rather, it is alleged that Mandichak-McConnell was present in the kitchen area but failed to intervene to prevent Beenick from using the electric slicer under purportedly unsafe work conditions. It is further alleged that Dittsworth's and Fagan's failure to properly supervise their subordinates and their knowledge of and acquiescence in the unsafe work practices employed with respect to the electric slicer led to Beenick's injury.

The defendants further contend that Beenick failed to properly exhaust his administrative remedies with respect to Counts III, IV, and V because his original grievance did not articulate a failure to intervene, failure to supervise, or knowledge and acquiescence theory of liability. Although the prison grievance policy directs an inmate to "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law" (*id.*), it does not require an inmate to identify all of the specific legal theories that might apply to the facts alleged in his or her

grievance.[6] "As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Jackson v. Ivens*, 244 Fed. App'x 508, 513 (3d Cir. 2007) (per curiam). Here, there is clearly a shared factual basis between all five of Beenick's claims.[7] Each of the four Eighth Amendment counts is based on the very same incident and very same purportedly unsafe working conditions, merely shifting between alternative theories of liability. Those working conditions, as addressed by his original grievance, included: using the electric slicer to cut cold, wet, and slippery watermelon, a food product for which the device purportedly was not designed; the absence of protective gloves, safety glasses, or protective smocks; and inadequate training on operation of the electric slicing machine.

---

[6] Indeed, even in federal court proceedings, an unrepresented inmate is required only to plead facts from which the court can infer a viable legal theory. *See, e.g., Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) ("[A]s [plaintiff] filed his complaint pro se, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.") (internal quotation marks omitted).

[7] The factual basis of Beenick's Fourteenth Amendment state-created danger claim under Count I is also coextensive with the factual basis of his Eighth Amendment deliberate indifference claims under each of the other four counts.

Accordingly, we find that Beenick exhausted all available administrative remedies prior to filing this action, and we turn to the merits of Beenick's claims.

### 3. Conditions-of-Confinement Claims

Beenick claims that LeFebvre was deliberately indifferent to a "near certainty of harm" to Beenick when he directed him to slice watermelons on the electric slicer without providing adequate training, supervision, or safety equipment. He claims that Mandichak-McConnell was deliberately indifferent to this same risk of harm in failing to intervene to prevent LeFebvre from requiring Beenick to operate the electric slicer under these purportedly unsafe working conditions. He claims that Dittsworth, Weaverling, and Fagan were deliberately indifferent to this same risk of harm in failing to supervise their subordinates or to ensure that adequate training and safety equipment was provided for inmates operating the electric slicer. He further claims that Dittsworth, Weaverling, and Fagan were deliberately indifferent insofar as they had knowledge of or acquiesced in the purportedly unsafe working conditions that led to Beenick's injury.

The Eighth Amendment's prohibition of cruel and unusual

punishment does not only restrain affirmative conduct, such as the use of excessive force against prisoners. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 5 (1992). It also imposes a duty on prison officials to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. "[A] prison official is deliberately indifferent when he *knows or should have known* of a sufficiently serious danger to an inmate." *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992) (emphasis in original). The term "should have known" is a term of art, which

> [d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . . , though something less than subjective appreciation of that risk. The "strong likelihood" of [harm] must be "so obvious that a lay person would easily recognize the necessity for" preventative action. [T]he risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir. 1991)) (citation omitted, alterations in original). "Mere negligence

claims do not constitute 'deliberate indifference.'" *Innis v. Wilson*, 334 Fed. App'x 454, 475 (3d Cir. 2009) (per curiam).

Here, the evidence of record, viewed in the light most favorable to the plaintiff, has established the following undisputed material facts:

(1)     On the morning of July 13, 2013, LeFebvre directed Beenick and one or two other inmates to cut watermelon using an electric food slicer, a Globe Slicer Model 3600P.[8] Beenick and the other inmates were not provided with any sort of safety gloves, safety goggles, safety smocks, or any other special safety equipment.

(2)     The electric slicer was complete—it was not missing its "knife cover" or any other integral safety equipment.[9]

(3)     The inmates were not provided with a demonstration or any special training on the electric slicer, nor were they provided with a copy of the device's instruction manual. No safety charts were posted on the wall near the electric slicers.

---

[8] Although Beenick has previously characterized this device in his inmate grievance and his pleadings as a "meat slicer," the record before us clearly demonstrates that the machine is merely labeled a "slicer," and that it is designed for the purpose of the "processing of food products." (Doc. 39-3, at 4; Doc. 40-1, at 3).

[9] (*See* Doc. 38-2, at 15–16).

(4)   The electric slicer's instruction manual did not require or recommend the use of safety gloves, safety goggles, safety smocks, or any other special safety equipment.[10]

(4)   Neither Beenick nor the other inmates protested or voiced any concern about their safety or about using the electric slicer.[11]

(5)   This was the first and only time an electric slicer was used to

---

[10] It did, however, recommend the use of "non-cutting safety gloves" when cleaning the slicer, which required removal of the knife cover and contact with the rotary knife blade to clean it. (*See* Doc. 39-3, at 13–15; Doc. 40-1, at 12–14).

[11] At his deposition, Beenick testified:

> Q. . . . [Y]ou indicated some prep cooks had knives, or there were knives available?
>
> A. Yes, there was [sic] knives available. Yes.
>
> Q. Anybody say, hey, Mr. LeFevre [sic], why can't we use knives?
>
> A. Yes, we did. And he said it would be faster on the slicer.
>
> Q. Well, was there time pressure to get— knock this out?
>
> A. Yeah, they were trying to get it done before lunch.

(Doc. 38-2, at 9). He further testified:

> Q. On the day in question, Mr. LeFevre [sic] assigns you and some other workers to cut the melons and he tells you to use the slicers. What other conversation, if any, did you have with him?
>
> A. Oh, I didn't have any other conversations.
>
> Q. Did you say anything to him after he assigned the task?
>
> A. No.

(*Id.* at 16).

cut watermelon at SCI Benner Township. LeFebvre had previously supervised the use of an electric slicer to cut watermelon at another institution, without incident. Neither LeFebvre nor any of the other defendants was aware of any prior incident in which an inmate injured himself while operating an electric slicer. Of the three inmates operating electric slicers to cut watermelon that morning, Beenick was the only one injured.

(6)    After approximately half-an-hour of slicing watermelons, Beenick injured his hand. Beenick had experienced some trouble manipulating the watermelon into the electric slicer's rotary blade. The watermelon was placed in the electric slicer's "food chute" with an "endweight" designed to hold it in place. With his right hand placed on the "food chute handle" to guide the food chute back and forth as the slicer operated, he found that the endweight did not hold the watermelon properly in place in the food chute. In addition to the endweight, Beenick used his left hand to assist in holding the watermelon in place in the food chute. His left hand slipped off the watermelon and fell into the electric slicer's rotary blade, lacerating his

ring and pinky fingers.[12]

(7)   Beenick was taken to a local hospital for medical treatment. The wound on his pinky finger was closed with stitches. Some bone at the "tuft"—or tip—of his ring finger had been severed by the rotary blade of the electric slicer. The bone fragment was removed, some nonviable skin was trimmed and the wound was closed with stitches. Beenick was prescribed pain medication, instructed on wound care, and returned to prison.

(8)   Beenick had no interaction with McConnell at all that morning. She did not enter the prep room where Beenick was working. She was not made aware that Beenick and other inmates were using electric slicers to cut watermelon.[13]

(9)   Dittsworth, Weaverling, and Fagan were not present the morning of Beenick's injury.[14]

Based on this record, viewed in the light most favorable to the plaintiff, Beenick has failed to establish a substantial risk of serious

---

[12] (*See* Doc. 38-2, at 9, 15).

[13] (*See* Doc. 38-2, at 13–14; Doc. 47-8, at 3).

[14] (*See* Doc. 38-2, at 14; Doc. 47-9, at 3; Doc. 47-7, at 3; Doc. 47-6, at 3).

harm. There is no evidence of any prior incident in which an inmate was injured while operating an electric slicer to cut watermelons, or any other food product. Beenick cannot establish a substantial risk of serious harm through a single incident. *Wallace v. Doe*, 512 Fed. App'x 141, 144 (3d Cir. 2013) (per curiam).

Moreover, based on this record, viewed in the light most favorable to the plaintiff, Beenick has failed to establish that the defendants acted with deliberate indifference. In the prison workplace context, "mere negligence is insufficient to constitute deliberate indifference." *Stephens v. Johnson*, 83 F.3d 198, 200–01 (8th Cir. 1996). While an isolated workplace accident such as this might demonstrate negligence by prison officials, it does not rise to the level of deliberate indifference. *See Bowie v. Procunier*, 808 F.2d 1142, 1143 (5th Cir. 1987) (per curiam) (affirming dismissal of complaint alleging failure to provide adequate safety equipment where a piece of bark put out one of the inmate-plaintiff's eyes while chopping wood). Even if prison officials had knowledge of similar accidental injuries, that knowledge falls short of demonstrating deliberate indifference. *See Stephens*, 83 F.3d at 201. "[M]ere failure to provide proper instructions or safety devices for use

on prison [work] details does not constitute deliberate indifference." *Brown v. Richmond County Corr. Inst.*, No. CV 105-118, 2006 WL 1431488, at *2 (S.D. Ga. May 22, 2006) (dismissing complaint alleging failure to provide safety helmet on work detail involving cutting trees where tree branch broke and struck inmate-plaintiff on the head). "To convert conduct that does not even purport to be punishment into conduct violative of the Eighth Amendment, 'more than ordinary lack of due care for the prisoner's interests or safety' must be shown." *Stephens*, 83 F.3d at 201 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (failure to provide protective equipment or install safety devices, despite knowledge of prior injuries, constituted mere negligence rather than deliberate indifference).

In addition, Beenick has failed to identify any evidence of "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar conduct" necessary to find the supervisory defendants—Dittsworth, Weaverling, and Fagan—deliberately indifferent under a failure-to-supervise theory of liability, as asserted in Count IV. *See C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (en banc). He has also failed to identify any evidence of the

"contemporaneous, personal knowledge and acquiescence" necessary to establish personal involvement by these same three defendants under the knowledge and acquiescence theory of liability asserted in Count V. *See Whetstone v. Ellers*, No. 3:08-CV-2306, 2009 WL 3055354, at *8 (M.D. Pa. Sept. 24, 2009). And Beenick has failed to identify any evidence whatsoever of personal knowledge or personal involvement by Mandichak-McConnell in the incident that injured him.

Accordingly, it is recommended that the defendants' motion for summary judgment be granted and judgment be entered in favor of the defendants and against the plaintiff on Counts II, III, IV, and V of the amended complaint.[15]

## C. The Plaintiff's Motion for Summary Judgment

Beenick has likewise moved for summary judgment. Based on the foregoing discussion, and viewing the record in the light most favorable to Beenick, the non-moving party, we find that Beenick has failed to demonstrate that he is entitled to judgment as a matter of law.

---

[15] The defendants have also moved for summary judgment on the grounds that they are entitled to qualified immunity. Having found no constitutional violation by any of the defendants, the Court need not reach the question of qualified immunity.

Accordingly, it is recommended that Beenick's motion for summary judgment be denied.

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.   Count I of the amended complaint (Doc. 21) be DISMISSED *sua sponte* for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1);

2.   The plaintiff's motion for summary judgment (Doc. 37) be DENIED;

3.   The defendants' motion for summary judgment (Doc. 45) be GRANTED with respect to the remainder of the amended complaint;

4.   The clerk be directed to ENTER JUDGMENT in favor of the defendants and against the plaintiff with respect to Counts II, III, IV, and V of the amended complaint (Doc. 21); and

5.   The clerk be directed to CLOSE this case.

Dated: July **29**, 2016

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BEENICK, JR.,

      Plaintiff,

      v.

MR. LEFEBVRE, et al.,

      Defendants.

CIVIL ACTION NO. 4:14-cv-01562

(BRANN, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated July _29_, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: July 29, 2016

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge